IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 7:12-cr-42 |
| ) | |
| ) | By: Michael F. Urbanski |
| KIA NICOLE MANNING, ) | |
| Defendant ) | Chief United States District Judge |

## MEMORANDUM OPINION

This matter comes before the court on defendant Kia Nicole Manning's pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 552. Counsel was appointed to Manning, who filed a supplemental motion for compassionate release. ECF No. 558. The government opposes Manning's motion, ECF No. 564, and Manning has filed a reply, ECF No. 568. For the reasons stated herein, the court will **GRANT** Manning's motion.

I.

On May 24, 2002, a federal grand jury charged Manning in a three count Indictment. Count One charged her with knowingly and intentionally possessing with intent to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Count Two charged her with conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h). Count Three charged her with conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(h). ECF No. 3, at 2-3. On November 28, 2012, Manning pled guilty to Counts One and Two of the Indictment pursuant, to a plea agreement that stipulated to the dismissal of Count Three and to a drug weight of more than 1,000 but less than 3,000 kilograms. ECF Nos. 202, 203.

1

The Presentence Investigation Report (PSR) stated that Manning was responsible for at least 1,000 but less than 2,000 kilograms of marijuana and assigned a total offense level of 31. Manning's criminal history category was IV, based on several misdemeanor convictions and the fact that the charged offense occurred while Manning was on probation for an unrelated conviction. ECF No. 296. On March 4, 2013, the court sentenced Manning to a term of imprisonment of 151 months, with five years of supervised release to follow. ECF No. 293. On May 27, 2016, the court reduced Manning's sentence to 121 months pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 to the United States Sentencing Guidelines. ECF No. 500. Manning is currently incarcerated at FPC Alderson, has a projected release date of November 10, 2021, and is eligible for home detention on May 10, 2021.

Manning seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A), arguing that her various medical issues constitute "extraordinary and compelling" reasons warranting a sentence reduction due to the risk posed by COVID-19 and that she is at increased risk due to the outbreak at FPC Anderson. Manning suffers from obesity, hypertension, and anemia. Manning asks the court to reduce her sentence to home confinement, and the government opposes any sentence reduction. As this matter is fully briefed, it is ripe for disposition.

## II.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30

2

> days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Manning's requested relief requires the court to consider (1) if she exhausted her administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in her sentence consistent with applicable policy statements; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors and if Manning is a danger to the safety of anyone else or the community.

i. <u>The government has waived the exhaustion requirement.</u>

The provision allowing defendants to bring motions for compassionate release under § 3582(c) was added by the First Step Act in order to "increas[e] the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5239 (2018). While the statute allows a defendant to bring the motion before the district court, a petitioner must first exhaust her administrative remedies. <u>See</u> 18 U.S.C. § 3582(c)(1)(A). A petitioner must satisfy one of two conditions, whichever is earlier: (i) "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or (ii) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]" <u>Id.</u> The first condition requires that the defendant fully exhaust all administrative rights – this

means that it is not enough for the warden to respond within 30 days by denying the request for compassionate release. If the warden denies the request within 30 days, the petitioner must then exhaust all administrative appeals available through the BOP. The second condition can only be met after the lapse of 30 days from when the warden received the petitioner's request and has not responded.

Here, Manning made a written request for compassionate release on June 24, 2020 and the warden denied her request on July 22, 2020. ECF No. 558-3. In the warden's letter denying her request, the warden specifically stated "[y]ou have the right to appeal this decision via the Administrative Remedy Procedure as outlined in policy." Id. Because Manning does not argue that she appealed the warden's decision, the court finds that Manning has not exhausted her available administrative remedies.

However, because the government states that Manning has exhausted her administrative remedies, the government has waived such a requirement. ECF No. 564, at 9. See e.g., United States v. Crawford, No. 2:03-cr-10084, 2020 WL 2537507, at *1 n.1 (W.D. Va. May 19, 2020) (citing United States v. May, 855 F.3d 271, 275–76 (4th Cir. 2017)) (finding § 3582's exhaustion requirement is not a jurisdictional bar, but a claims-processing rule that may be waived); United States v. Alam, 960 F.3d 831, 834 (6th Cir. 2020) (holding that the exhaustion requirement is a mandatory claims-processing rule that has two exceptions: waiver and forfeiture).

ii. Manning presents extraordinary and compelling reasons to warrant a sentence reduction.

Because the government has waived exhaustion, the court will consider her to have exhausted her administrative remedies. The court must then consider if it should "reduce the

term of imprisonment." See 18 U.S.C. § 3582(c)(1)(A). The U.S. Sentencing Guidelines Manual ("USSG") § 1B1.13 application notes state that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of her sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the BOP, for "other reasons" other than, or in combination with, the reasons described in Application Notes (A)-(C). Id., at cmt. n. 1(A)-(D).

"In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at her prison facility." United States v. Harper, No. 7:18-cr-25, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020) (citing United States v. Feiling, No. 3:19-cr-112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020)). Here, Manning satisfies both requirements. Manning contends her obesity, hypertension, anemia, and race place her at a heightened risk for serious illness from COVID-19. The government agrees that Manning's medical conditions—namely, her obesity, given her Body Mass Index ("BMI") of 32—constitute an "extraordinary and compelling reason" under the policy statement. See ECF No. 63 at 8; USSG § 1B1.13, cmt. n. 1(A). The Centers for Disease Control and Prevention lists obesity, defined as having a BMI of 30 or over, as a

5

condition that places people at an increased risk for severe illness from COVID-19.[1] While Manning's health profile would not typically constitute an extraordinary and compelling reason, in the context of the ongoing COVID-19 pandemic, the court agrees that Manning has satisfied this requirement. See United States v. Evans, No. 3:00-cr-63, 2020 WL 5121331, at *5 (E.D. Va. Aug. 31, 2020) ("[C]ourts have recognized that the COVID-19 pandemic can create an extraordinary and compelling reason for a sentence reduction where, absent the pandemic, the same medical conditions alone would not suffice."); United States v. Collins, No. 17-cr-649, 2020 WL 3960831, at *4 (D. Md. July 13, 2020) (finding obesity in conjunction with hypertension and asthma grounds for finding "extraordinary and compelling" reasons); United States v. Bush, No. 13-cr-479, 2020 WL 5628989, at *8 (D. Md. Sept. 18, 2020) (finding hypertension in conjunction with prediabetes, hyperlipidemia, hypothyroidism, and Hepatitis C sufficient to constitute "extraordinary and compelling" reasons); United States v. Kelley, No. 7:16-cr-00022, 2020 WL 6414849, at *2 (W.D. Va. Nov. 2, 2020) (finding obesity in conjunction with the ongoing presence of active cases at federal facility sufficient to find "extraordinary and compelling" reasons).

The court also finds that Manning has shown that she faces a particularized risk of contracting the virus. On October 1, 2020, Manning filed a notice informing the court that despite FPC Alderson's best efforts at screening and containment, that there were at least two active cases of COVID-19 among the inmates in her facility. ECF No. 569. Accordingly, the

---

[1] See Centers for Disease Control and Prevention, People Who Are at Increased Risk for Severe Illness, available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited September 9, 2020). Further, the list includes that people with hypertension "might be at an increased risk for severe illness from COVID-19." Id.

court finds that Manning has established extraordinary and compelling reasons warrant a reduction in her sentence.

    iii.    <u>Manning is not a danger to the safety of anyone else or the community and a sentence reduction is appropriate after considering the § 3553(a) factors.</u>

While the parties agree that Manning has exhausted her administrative remedies and that she has established extraordinary and compelling reasons warrant a reduction in her sentence, the government opposes her release to home confinement because it claims the § 3553(a) factors weigh against it. The court disagrees and finds that Manning is not a danger to the community and the § 3553(a) factors weigh in favor of release.

First, "the court is advised against grants of compassionate release when the petitioner is a danger to the safety of any person or to the community." <u>Turner v. United States</u>, No. 2:18-cr-128, 2020 WL 4370124, at *3 (E.D. Va. July 30, 2020) (citing USSG § 1B1.13(2)). As such, pursuant to § 1B1.13(2), the court must consider the 18 U.S.C. § 3142(g) factors in determining whether Manning is a danger to the safety of any other person or to the community. The relevant factors include "the nature and circumstances of the offense charged;" "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history;" and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." <u>United States v. Ramirez</u>, No. 7:16-cr-55, 2020 WL 5637402, at *3 (W.D. Va. Sept. 21, 2020) (quoting <u>United States v. Rodriguez</u>, 451 F.Supp.3d. 392, 2020 WL 1627331, at *11 (E.D. Pa. 2020)).

Here, the government fails to argue that Manning is a danger to any person or the community. Indeed, the focus of the government's argument is that the § 3553(a) factors weigh

in favor of her continued incarceration. The government summarily reviews Manning's criminal history in support of its argument for her continued incarceration, portending her "record reflects a significant number of contacts with the criminal justice system, including two assault and battery convictions as well as vehicle and property damage, vehicle damage and destruction of property convictions." ECF No. 546, at 11-12. The government also notes that Manning has not been identified by the BOP as a candidate for home release at this time. Id., at 8.

To the extent the government's focus on Manning's criminal history constitutes an argument that she poses a danger to the community, the court finds that Manning's criminal history consists predominantly of minor, non-violent infractions, none of which were felonies, and most of which occurred over ten years ago. Moreover, given the substantial amount of time that has lapsed since the charges in question, the court finds their relevance to Manning's likelihood of committing future offenses limited. Manning has been held at a minimum-security federal prison. The court finds a better predictor of Manning's behavior her custodial disciplinary record, which reflects only three minor institutional infractions over the course of her nearly nine-year tenure in the federal correctional system without the loss of any good time credit. ECF No. 558, at 9-10.

Second, the court must consider if a sentence reduction is consistent with the applicable § 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A). Those factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal

8

conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. See 18 U.S.C. § 3553(a). Here, the § 3553(a) factors weigh in favor of a sentence reduction.

The government argues that the § 3553(a) factors weigh against release because Manning has had several contacts with law enforcement prior to being arrested for the charge for which she is currently serving time. As discussed earlier, the court finds Manning's criminal history of minimal concern given the substantial time that has lapsed since the infractions, and their predominantly nonviolent nature. Manning concedes the seriousness of the federal offense for which she is serving time, the distribution of large quantities of marijuana and conspiracy to launder money. However, Manning has served over 85% of her sentence with minimal incidents during her time in federal detention. She is eligible for home confinement in approximately six months and is set to be released in approximately one year. She also represents that her home plan, living with her daughter in Roanoke, has been investigated and approved by the United States Probation Office in Roanoke.

Accordingly, the court finds that Manning is not a danger to the safety of any other person or to the community and the § 3553(a) factors weigh in favor of compassionate release.

### III.

For the reasons stated herein, the court **GRANTS** Manning's motion for compassionate release, ECF No. 552, and **MODIFIES** Manning's sentence of imprisonment to time served, with supervised release with a condition of home confinement to follow for the remaining 12 months of her term of imprisonment, in addition to all of the terms and

9

conditions of supervised release previously imposed. The order will be stayed for up to fourteen days, for the verification of Manning's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure her safe release. Manning shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure Manning's safe release, the parties shall immediately notify the court and show cause why the stay should be extended. Once released, Manning will self-quarantine at home for fourteen days.

The clerk is directed to send a copy of this memorandum opinion and accompanying order to all counsel of record.

An appropriate order will be entered.

It is so **ORDERED**.

Entered:   November 3, 2020

Michael F. Urbanski
Chief U.S. District Judge
2020.11.03 13:30:23 -05'00'

Michael F. Urbanski
Chief United States District Judge